## COOLEY *et al. v.* McKINNEY.

The evidence on the controlling facts in the case being somewhat conflicting, and no error in the charge or other ruling of the court being complained of, the presiding judge did not abuse his discretion in overruling the motion for a new trial.

December 28, 1891.                    *Judgment affirmed.*

New trial. Waters. Damages. Before Judge WELLBORN. White superior court. April term, 1891.

In November, 1889, two suits were brought by B. W. McKinney, one as life-tenant, the other as next friend of his children as remaindermen, against Cooley and Dean, for damage to certain lands, alleged to have been caused by the dam of defendants, which was erected across a creek which ran through the land of plaintiff and some distance below the same, it being alleged that by reason of the dam and the raising of it, the creek and drain-ditches were caused to fill up with sand, etc.,

so as to cause overflows, seepage and the like. The defendants set up a prescriptive right; that by agreement with the testator under whom McKinney and his children held, Finger, defendants' predecessor in title, was allowed to raise the dam, and it had been raised to the height agreed upon; that afterwards the testator and Cooley had a dispute as to the injury to the land by the dam, and agreed to ditch the land, and if there was fall enough to dry it, the testator was to be satisfied for all time to come, and if not, Cooley was to give the testator $300 for twenty acres including all the bottom land that the testator owned on the stream up to a certain point, and some other bottom land; that the land was ditched according to this agreement, and the testator was satisfied that there was sufficient fall and refused to sell to Cooley the twenty acres for $300, etc.

By agreement the two cases were tried together, separate verdicts being rendered. In the life-tenant's case the jury found for plaintiff $150 with costs, and in the remaindermen's case, for plaintiff costs of suit. Defendants moved for a new trial in both cases, on the ground that the verdicts were contrary to law and evidence.

The motion was granted as to the remaindermen's case and refused as to the life-tenant's; and defendants excepted to this refusal.

It appeared that William McKinney, father of the life-tenant, died in May, 1887, leaving by will a life estate in the land in question to B. W. McKinney with remainder to his children. The dam and pond have been in existence over fifty years. There was testimony for plaintiff that injury to the land began eighteen years before the trial, and is worse now than it was ten years ago. About 1886 work was done on the dam, by which it was raised higher. It had been the custom before that time frequently to open the flood-gate of the dam, usually on Saturday, and at times to remove planks of

it so as to allow water to escape and carry away accumulations of sand, etc. The defendants much less frequently have allowed the water to run off; and much sand has accumulated, plaintiff's ditches have been filled up, the creek running through the land in question has been caused to fill up and overflow, the land has been made wet and unfit for cultivation, and much damage has been done both to the life-tenant and the remaindermen, the damage to the crops being much more than the amount found for the life-tenant. Since the suits were brought, the flood-gate has been opened frequently and the land is drier and in a better condition. B. W. McKinney complained to Cooley in 1886 that the creek was filled up and that Cooley did not raise the gate, and Cooley said to tell the testator he (Cooley) would see that the contract was carried out, and not to bother himself about it. The contract between the testator and Cooley as to ditching the land, etc., above mentioned, was made in 1880. After the ditch was done, Dean said that the flood-gate should be raised every Saturday and stay up until Monday, that he would write to his miller to that effect, and turn him off if he did not raise the gate. Plaintiff has cleaned out his ditches and has cleaned out the creek, which was not obstructed by roots. He testified that ditches should be four or five feet deep in order to make land produce, and that none of his ditches were over three feet deep; that Cooley and his father ditched the creek some in 1880, lowering it at plaintiff's line one and a half feet, and it had not been ditched since; that that ditching cost $7.50, and testator was not satisfied with it; that Dean said he would raise the flood-gate, and testator said that would suit him; that testator told Dean he would as soon have $300 as the land, but did not take the money; that the twenty acres that testator was to let Cooley have did not include all that was injured;

that testator did not sue on the contract because Cooley kept raising the gate; that defendants kept the creek sinking until 1886; and that testator was willing for the land to go for $300. That there was also negative testimony for plaintiff tending to show that Finger did not pay the testator for the privilege of raising the dam. Testator told Finger he thought it would injure his (testator's) land, and Finger said he did not think it would; testator said if Finger thought it would not injure the land, testator had no objections, and Finger said if the land was injured by the dam being raised, he would take it down to its original height, or would make the damage good; after Finger sold his mills the testator complained to him that his land was being damaged, and Finger insisted that the dam was all right when he left it, that it might have been raised higher afterwards, but it was all peaceable when he sold it and he heard no complaint about it at the time, etc. The land was given in for taxes by plaintiff at an increasing valuation from 1882 to 1890.

For the defendants there was evidence that Finger and testator made a contract by which Finger was allowed to raise the dam a foot, upon payment of $50; that he paid the $50 to the testator; that he raised the dam or had it raised to the agreed height; that it had been repaired by defendants, but not raised higher than the height agreed to by testator and Finger; that the dam and pond not only do not decrease the permanent value of the land, but are a benefit to it by causing deposits of soil in times of freshet, etc.; that plaintiff does not keep his ditches clear and does not properly remove obstructions from the creek; that the land was "turned out" by testator, because it was not fit for cultivation, some ten or twelve years before the trial; that the land could all, or most of it, be dried by ditching it and cleaning out the creek, and all farmers who cultivate

bottom lands have to do this every year; that there was plenty of fall to drain the land; that defendants' miller had made it a rule to raise the flood-gate on Saturday nights, but sometimes could not do so on account of high water; that plaintiff was tending land as low as when this miller went there, which was six or seven years before the trial, but his ditches had not been cleaned out in two or three years; that some obstructions lately got into the water-house at the mill and for three weeks could not be got out, although the water was drawn off every day or two, and this was the reason why the gate was raised so often; that plaintiff's land is higher and drier than in 1888; that after the ditch was cut by testator and Cooley, the testator said he wanted the land and did not want the $300 for it; that if the ditch did dry the land he wanted to keep it; that testator said he had made a contract with Cooley to raise the gate once a week, but Cooley did not comply with it. One of the executors of the testator testified that the testator did not say whether he was satisfied with the effect of the ditch or not; that some places were not dried by the ditch; that the fall at the head of the ditch that testator and Cooley cut was two and a half feet perpendicular. Another witness testified that the ditch was cut seventy-six rods and would give seven and a half inches fall; water would run in the ditch though cut to a level; and the ditch was filled with sand in 1890. Another testified that the testator said he was satisfied with the ditch he and Cooley cut, and if they would keep the gate raised on Saturday night he would not have the dam away for $150. Testator, after the ditch was cut, wanted to lease bottom land to another witness, precise place not mentioned, and said two or three ditches would dry all of it, etc.

J. B. Estes, for plaintiffs in error.

J. J. Kimsey and A. F. Underwood & Son, *contra.*